**DICKINSON WRIGHT PLLC**
JOHN L. KRIEGER (Nevada Bar No. 6023)
Email: jkrieger@dickinsonwright.com
HILARY WILLIAMS (Nevada Bar No. 14645)
Email: hwilliams@dickinsonwright.com
8363 West Sunset Road, Suite 200
Las Vegas, NV 89113
Tel: (702) 550-4440
Fax: (844) 670-6009

**ONDERLAW, LLC**
James R. Dowd (Missouri Bar No. 28818MO) (Pro Hac Vice)
Email: jim@dowdj.com
MATTHEW P. O'GRADY (Missouri Bar No. 47543MO) (Pro Hac Vice)
Email: mpo@onderlaw.com
110 East Lockwood, 2nd Floor
St. Louis, MO 63119
Tel: (314) 963-9000
Fax: (314) 963-1700
*Attorneys for Plaintiff Ken Warren*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KEN WARREN, | CASE NO: 2:17-cv-01100-JAD-GWF |
| Plaintiffs, | |
| vs. | **[PROPOSED] JOINT PRETRIAL ORDER** |
| CARDOZA PUBLISHING, INC., and AVERY CARDOZA *also known as* ALLAN SILBERSTANG, | |
| Defendant. | |

Following pretrial proceedings in this cause, Plaintiff Ken Warren ("Warren" or "Plaintiff") and Defendants Cardoza Publishing, Inc. and Avery Cardoza also known as Allan Silberstang (collectively, "Defendants"), by and through their respective counsel of record, hereby submit the following proposed joint pretrial order pursuant to LR 16-4:

1. **STATEMENT OF THE NATURE OF THE ACTION**

**Plaintiff's Statement of the Case:**

Defendants willfully violated Plaintiff's copyrights, breached the contracts they entered into with him to reproduce and sell Plaintiff's works (the "Book Contracts") and fraudulently attempted to conceal the extent of their malfeasance through threats and misrepresentations.

In addition to the contracts identified in the Uncontested Facts, Defendants and Plaintiff entered into two additional contracts. Under the first contract, dated April 4, 1995, Warren and Defendant Silberstang entered into a Cardoza Publishing Book Contract for the publication and distribution of a book tentatively titled *Complete Guide to Winning Hold'em Poker*, eventually published as *Winner's Guide to Texas Hold'em Poker*. Under this contract, Warren was to receive 6% of the retail price for all paperbacks sold and 7.5 of the retail price for all hardcovers sold in the United States. In addition, Cardoza published a second edition of the *Winner's Guide to Texas Hold'em Poker* in or about 2008. Furthermore, Warren and Cardoza entered into another contract, dated December 4, 2006[1] for the publication and distribution of a book tentatively titled *Ken Warren Teaches Hold'em 2*, eventually published as *Ken Warren Teaches Texas Hold'em Volume 2*. Under this contract, Warren was to receive 7% of the retail price for all paperbacks sold in the United States and 3.5% on all paperbacks sold internationally. Hardcover books are not referenced in this contract.

Furthermore, Defendants produced second and/or translated editions of certain titles. For example, Cardoza published a second edition of the *Big Book of Poker* in or about 2007. In addition, Defendants contracted with Heel Verlag GmbH and published a German translation of the *Big Book of Poker*, titled *Das Grosse Pokerbuch* (ISBN 13: 978-3-89880-690-9), and Defendants contracted with Fantaisium and published a French translation of the *Big Book of Poker*, titled *Le Grand Livre Du Poker* (ISBN 10: 1-58042-113-X). Moreover, Defendants published a second edition of Plaintiff's work *Ken Warren Teaches 7 Card Stud*.

Defendants willfully overstepped the license Plaintiff provided them via written contracts

---

[1] The document was signed and dated in December 4, 2006, but the typed agreement is dated December 4, 2007.

2

to publish, sell and market his works in paperback and hardcover formats by reproducing Plaintiff's works in an e-book format without authorization and continuing to profit from copyrights they are no longer entitled to use. The Court has already found Defendants liable for copyright infringement for reproducing and distributing Plaintiff's works in electronic form, namely as e-Books. Furthermore, Plaintiff terminated the contracts authorizing Defendants to publish, market and sell his works, and yet Defendants appear determined to continue to profit from the commercial value and goodwill associated with Plaintiff's copyrights until they are forced to cease doing so by the Court. Plaintiff is statutorily entitled to treble damages due to Defendants' willfulness in violating his exclusive copyrights without authorization and continuing to profit therefrom.

Defendants entered into contracts with foreign businesses to publish translations of Plaintiff's copyrighted works such as *The Big Book of Poker* into German and French. Specifically, Defendants entered into contracts with Heel Verlag GmbH and Fantaisium and granted both of them rights to publish Plaintiff's copyrighted works, which resulted in the publication of *Das Grosse Pokerbuch* (ISBN 13: 978-3-89880-690-9) and *Le Grand Livre Du Poker* (ISBN 10: 1-58042-113-X). Defendants did not inform Plaintiff of these contracts nor did he accurately provide royalty statements for the sales of the translations of Plaintiff's copyrighted works resulting therefrom. In order to enter into the contract with Heel Verlag GmbH, Avery Cardoza falsely represented himself as an author of Plaintiff's copyrighted works.

Furthermore, Defendants breached the terms of the contracts they entered into with Plaintiff by refusing to render royalty statements or provide royalty payments to him. Plaintiff has not received a royalty statement or payment for at least a decade in spite of the written agreement stating that Defendants would provide both biannually. The royalty statements that were provided over ten years ago are inaccurate.

When Plaintiff suspected that Defendants were being less than truthful with him, he attempted to verify the royalty statements that Defendants had previously provided with the foreign publishers Defendants used to reproduce his works. Defendants, upon learning of these

communications, threatened Plaintiff and forbade him from communicating with anyone but Defendants in order to hide and continue their malfeasance. Thereafter, Plaintiff was unable to obtain accurate sales numbers from Defendants to verify the royalty statements provided.

**Defendants' Statement of the Case:**

This case is the latest litigation commenced by Plaintiff against Defendants wherein Plaintiff has continued to seek relief to which he is not entitled. Plaintiff has not been successful in previous litigation against Defendants. Defendants have fully and completely performed each and every condition of all agreements between the parties, have made payments and advanced funds to Plaintiff in an amount greater than Plaintiff is entitled to under the parties' publishing agreement. Defendants have not been repaid thousands of dollars in advances against future royalties that were previously paid to Plaintiff.

After years of litigation and having failed to complete any discovery in this action other than sending one set of interrogatories and requests for production, Plaintiff concocted a completely new (and previously unpled) claim alleging that Defendants are infringing on his copyrights by selling eBook versions of Plaintiff's books. Incredulously, Plaintiff not only misrepresented the intent and scope of the parties' contractual relationships, he also submitted unsigned and incomplete "contracts" as purported support for his new claim.

Although the Court granted partial summary judgment related to Plaintiff's claim for infringement of eBook rights [ECF 95], Defendants respectfully disagree with this decision and believe it to be erroneous, subject to reversal, and based on a misinterpretation of the parties' contract, which was likely caused by Plaintiffs' misrepresentations. Plaintiff never raised his newly-concocted eBooks argument throughout the many years of previous litigation surrounding the same alleged contractual violations. He only made such a claim regarding eBooks after discovery was closed in this matter and Plaintiff realized that he needed to move the goalposts in order to avoid certain defeat on his meritless claims.

The underlying facts between the parties are as follows. Plaintiff wrote a total of six (6) books in the 1990s and early 2000s. Despite the creative presentation of the Plaintiff, there remain

six (6) book titles and no more. He has written nothing since and his works have become antiquated. His assumption of a "strong commercial value and goodwill" associated with his works is self-serving, patently false and entirely unsupported. Indeed, his print sales have been virtually non-existent for almost a decade. The Parties' contract did not prohibit Defendants from publishing eBooks, and includes a "special editions" clause. The term "special editions" is a term to cover all forms other than the specific forms enumerated in the contract. The reality is that very minimal sales of *any* of Plaintiff's work have occurred, including eBooks, and there are no damages to Plaintiff because he has received all royalties to which he is entitled. In spite of the Court's ruling from ECF 95 regarding to eBooks, Plaintiff will be unable to show any actual damages as a result of his allegations against Defendants. It is anticipated that Plaintiff will rely on statutory damages, but even those should be found to be on the minimum end, and with relation to a small set of publications, and subject to reversal on appeal due to the entry of summary judgment being made without admissible evidence being presented by Plaintiff and without Defendants being afforded the opportunity to present disputed issues of material fact relevant to the contract to a jury.

**2.    STATEMENT OF JURISDICTION**

Jurisdiction is not disputed.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367. Plaintiff's claims are, in part, based on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051, et seq. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

Plaintiff Ken Warren is and was, at all relevant times, a resident of St. Charles County, State of Missouri. Defendant Cardoza Publishing Company is a foreign corporation organized and existing under the laws of the State of Florida, with its principal place of business located in Las Vegas, Nevada. (ECF No. 49 ¶ 2.) Defendant Avery Cardoza is a resident and citizen of the State of Nevada, and his actual name is Allan Silberstang (hereinafter "Silberstang"). (*Id.*)

**3.    UNCONTESTED FACTS**

The following facts are admitted by the parties and require no proof:

***Uncontested facts relevant to Plaintiff***

1.      Defendant Silberstang is the founder and sole owner of Defendant Cardoza Publishing and has the sole authority to make all decisions for Cardoza Publishing ("Cardoza"). (*Id.*)

2.      At all relevant times, Defendant Silberstang was acting individually and within the course and scope of his agency and employment with Defendant Cardoza. (*Id.*)

3.      Plaintiff and Defendant Cardoza, through its authorized agent Defendant Silberstang, executed contracts entitled "Cardoza Publishing Book Contract," (the "Book Contracts").

4.      Under each contract, Warren was to write and provide a manuscript to Cardoza who was contractually authorized to publish, market and sell hardback and/or soft-cover versions of the titles.

5.      In exchange, Cardoza was to provide biannual reports and royalty payments at different rates per title.[2]

6.      Specifically, the Book Contracts required Defendants "to render biannual statements of account … 60 days after the half has ended" and defined the "half" as being January-June and July- December. (*Id.*)

7.      The Book Contracts further obligated Defendants to pay the royalties owed to Plaintiff biannually "90 days after the half has ended." (*Id.*)

8.      Under the first contract, dated June 24, 1996, ("Contract #1") Warren and Defendant Silberstang entered into a Cardoza Publishing Book Contract for the publication and distribution of a book tentatively titled *Texas Hold 'em 2*.

9.      Under Contract #1, Warren was to receive 6% of the retail price for all paperbacks sold and 7.5% of the retail price for all hardcovers sold in the United States.

---

[2] Specifically, the Book Contracts state and require the following: "The Publisher shall pay the author the following royalties on sales (less returns): (a) Sales of paperback (trade and/or mass market) in the United States: 6% of the retail price for all copies sold; (b) Sales of hardcover (if applicable) in the United States: 7.5% of the retail price for all copies sold; (c) Sales of paperback and hardcover outside the United States: 50% of the normal royalty for all copies sold," except with regard to *Ken Warren Teaches 7 Card Stud* and *Ken Warren Teaches Hold 'em 2* in which 6% was replaced with 7%. (ECF No. 49 ¶ 4)

10.     Warren and Cardoza entered into a second contract, dated June 13, 2002, ("Contract #2") for the publication and distribution of a book tentatively titled *Ken Warren Teaches Hold'em*, eventually published as *Ken Warren Teaches Texas Hold'em*.

11.     Warren was to receive 6% of the retail price for all paperbacks sold and 7.5% of the retail price for all hardcovers sold in the United States under Contract #2.

12.     In addition, Cardoza was to provide Warren with 3% of all paperbacks sold and 3.75% of all hardcovers sold internationally under Contract #2. *Id.*

13.     Warren and Cardoza entered into a third contract, dated August 29, 2002, ("Contract #3") for the publication and distribution of a book tentatively titled *Ken Warren Teaches Omaha*, eventually published as *The Winner's Guide to Omaha Poker*.

14.     Under Contract #3, Warren was to receive 6% of the retail price for all paperbacks sold and 7.5% of the retail price for all hardcovers sold in the United States.

15.     In addition, Cardoza was to provide Warren with 3% of all paperbacks sold and 3.75% of all hardcovers sold internationally. *Id.*

16.     Warren and Cardoza entered into a fourth contract, dated February 1, 2003, ("Contract #4") for the publication and distribution of a book tentatively titled *Big Book of Poker*.

17.     Under Contract #4, Warren was to receive 6% of the retail price for all paperbacks sold and 7.5% of the retail price for all hardcovers sold in the United States.

18.     In addition, Cardoza was to provide Warren with 3% of all paperbacks sold and 3.75% of all hardcovers sold internationally. *Id.*

19.     Warren and Cardoza entered a fifth contract, dated September 3, 2004, ("Contract #5") for the publication and distribution of a book titled *Ken Warren Teaches 7 Card Stud*.

20.     Under Contract #5, Warren was to receive 7% of the retail price for all paperbacks sold in the United States and 3.5% for all paperbacks sold internationally.

21.     Hardcover books were not referenced in the Contract #5.

22.     Warren and Cardoza entered into a sixth contract, dated September 3, 2004, ("Contract #6," and together with Contract #1, Contract #2, Contract #3, Contract #4, and Contract

#5, collectively, the "Book Contracts") for the publication and distribution of a book tentatively titled *Ken Warren Teaches Hold'em 2,* eventually published as *Ken Warren Teaches Advanced Texan Hold'em Vol. 2.*

23.     Under Contract #6, Warren was to receive 7% of the retail price for all paperbacks sold in the United States and 3.5% for all paperbacks sold internationally.

24.     Hardcover books were not referenced in Contract #6. *Id.*

25.     The following titles were authored by Warren and published by Cardoza Publishing:

a.  *Ken Warren Teaches 7 Card Stud* (ISBN-13: 9781580421577; ISBN 10: 1580421571);

b.  *Ken Warren Teaches Texas Hold'em I* (ISBN 13: 9781580422383; ISBN 10: 1580422381);

c.  *Ken Warren Teaches Texas Hold'em, Volume 2* (ISBN 13: 9781580422543; ISBN 10: 1580422543);

d.  *Ken Warren Teaches Texas Hold'em* (ISBN 13: 9781580420853; ISBN 10: 1580420850);

e.  *Ken Warren Teaches 7 Card Stud* (ISBN 13: 9781580422215; ISBN 10: 1580422217);

f.  *Ken Warren Teaches Advanced Texas Hold'em, Vol. 2* (ISBN 13: 9781580421584; ISBN 10: 158042158X);

g.  *The Winner's Guide to Omaha Poker* (ISBN-13: 9781580421027; ISBN 10: 1580421024);

h.  *Winner's Guide to Texas Hold'em* (ISBN 13: 9781580422307; ISBN 10: 1580422306);

i.  *Winner's Guide to Texas Hold'em Poker* (ISBN 13: 9780940685598; ISBN 10: 0940685590);

j.  *The Big Book of Poker: A big, easy, and fun guide to winning* (ISBN 13:

9781580421133; ISBN 10: 158042113X); and

k.   *The Big Book of Poker* (ISBN 13: 9781580422192; ISBN 10: 1580422195).

(collectively, the "Published Books".)

26.     Plaintiff owns valid copyrights in all of the books identified in the Book Contracts ("Plaintiff's Books"). (*See* ECF No. 49, ¶ 10)

27.     Said copyrights are registered with the United States Copyright Office. *Id.*

28.     In 2002, Defendant Silberstang represented to Plaintiff in a letter provided with his semi-annual royalty statement, that Defendants had formed a relationship with Simon & Schuster and that they would distribute and sell Plaintiff's Books through Simon & Schuster, Inc. (*See* ECF No. 49 ¶ 4.)

29.     Malloy Lithograph and Versa Press were the printers of the Published Books.

30.     Licenses to the Published Books were granted to Heel books in Germany and to Fantaisium in France.

31.     While Defendants have continued to publish and sell Plaintiff's Books, Defendants have made no royalty payments to Plaintiff for many years. *Id.*

32.     Since at least 2010, Defendant Cardoza Publishing has featured Plaintiff's Books on its interactive website www.cardozabooks.com. (*Id.*)

33.     Defendants, and each of them, have presented and continue to present to the world an assumed right and/or authorization to sell Plaintiff's Books. (ECF No. 49 ¶ 10.)

34.     Defendants, and each of them, have received and continue to receive money and other benefits from the continuing and ongoing sales of Plaintiff's Books. (*Id.*)

35.     The Court has already entered Partial Summary Judgment against Defendants and held that Defendants are liable to Plaintiff for violating Plaintiff's copyright by selling Plaintiff's Books in an electronic (eBook) format without authorization.[3]

***Uncontested Facts Relevant to Defendants***

---

[3]  Although Defendants stipulate to the fact that the Court entered its Order granting partial summary judgment as stated herein [ECF 95], Defendants specifically reserve all legal rights related to reconsideration of the Order and/or to any procedurally-allowed challenge or appeal seeking to reverse the Order granting partial summary judgment.

1.     No additional uncontested facts.

**4.     NON-ADMITTED, BUT UNCONTESTED FACTS**

The following facts, though not admitted, will not be contested at trial by evidence to the contrary: None.

**5.     ISSUES OF FACT TO BE TRIED AND DETERMINED AT TRIAL**

The following are the issues of fact to be tried and determined upon trial:

**A.     Plaintiff's Issues of Fact:**

1.     Whether, at the time of the Book Contracts' formation, Plaintiff intended to enter into a contract in which he would provide a license to Defendants to publish, market and sell his Copyrighted Works and in which Defendants would provide accurate biannual royalty statements and payments at the rate of: 6% of the retail price for paperbacks sold domestically (except for *Ken Warren Teaches 7 Card Stud* and *Ken Warren Teaches Hold 'em 2* in which Plaintiff was to receive 7%); 7.5% of the retail price for all hardcover books sold domestically; and 50% of the normal royalty rate for all international copies sold.

2.     Whether, at the time of the Book Contracts' formation, Defendants intended to enter into a contract in which they would have a license to publish, market and sell Plaintiff's Copyrighted Works and in which they would provide accurate biannual royalty statements and payments at the rate of: 6% of the retail price for paperbacks sold domestically (except for *Ken Warren Teaches 7 Card Stud* and *Ken Warren Teaches Hold 'em 2* in which Plaintiff was to receive 7%); 7.5% of the retail price for all hardcover books sold domestically; and 50% of the normal royalty rate for all international copies sold.

3.     Whether Defendants willfully infringed on Plaintiff's copyrights by publishing and selling Plaintiff's Copyrighted Works in an eBook format;

4.     Whether Defendants intended to and did induce Plaintiff's justified reliance on a material misrepresentation of fact when they sent the email dated January 22, 2008 in which they

threatened Plaintiff with financial repercussions and insisted that he only communicate with Defendants for accurate information;

5.      Whether Defendants intended to and did induce Plaintiff's justified reliance on a material misrepresentation of fact when they provided inaccurate royalty statements;

6.      Whether Plaintiff terminated his Book Contracts with Defendants;

7.      Whether Defendants provided Plaintiff with inaccurate royalty statements and/or interfered with Plaintiff's ability to obtain accurate royalty information from third parties in bad faith;

8.      Whether Defendants willfully attempted to prevent Plaintiff from discovering their malfeasance by sending Plaintiff threatening communications when he attempted to verify sales with third parties such as international publishing house, Heel Verlag GmbH.

**B.      Defendants' Issues of Fact:**

1.      Whether Defendants took any actions in violation of their obligations under the various contracts.

2.      Whether Plaintiff actually or properly terminated the various contracts.

3.      Whether Plaintiff suffered any actual damages by way of the alleged conduct of Defendants.

4.      Whether the term "special editions" in the Book Contracts includes special non-print editions not specifically mentioned in the agreement, including but not limited to eBooks.

5.      Whether the *de minimis* royalties owed to Plaintiff were properly offset by outstanding debts owed by Plaintiff to Defendants.

6.      Whether certain contracts between the parties are valid, unambiguous, and enforceable contracts; and whether certain contracts claimed by Plaintiff to be valid contracts are authentic documents or not.

**6.      CONTESTED ISSUES OF LAW**

The following are the issues of law to be tried and determined upon trial.

**A.      Plaintiff's Issues of Law:**

1.     Whether the Book Contracts are valid and enforceable;

2.     Whether Defendants breached their unambiguous duties under the Book Contracts to:

    a.  "[R]ender biannual statements of account … 60 days after the half has ended" with "half" defined as being January-June and July-December; and

    b.  Pay the royalties owed to Plaintiff biannually "90 days after the half has ended."

3.     Whether Defendants' liability for statutory damages should be enhanced because they knew that their actions constituted infringement and/or violations of the Copyright Act.

**B.**     **Defendants' Issues of Law:**

1.     Whether Defendants have breached any valid and enforceable contract with Plaintiff;

2.     Whether Defendant was allowed to unilaterally cancel the parties' contracts, and whether he in fact ever did notify Plaintiff of his alleged attempt to cancel the parties' contracts;

3.     Whether Plaintiffs have been harmed financially or in any tangible way by Defendants' conduct as allegations in the Complaint;

3.     Whether Defendants are liable for any damages whatsoever; and if statutory damages are sought, whether any statutory damages beyond the minimum amounts set forth in the applicable statutes should be awarded;

4.     Whether the term "Special Edition" found in the Book Contracts includes special non-print paperback and hardcover editions not specifically mentioned in the agreement, including but not limited to e-books;

5.     Whether Plaintiff has met his burden of production to show harm whatsoever for Defendants' alleged actions.

**1.**     <u>**DOCUMENTARY EXHIBITS**</u>

    **A.**     **The following exhibits are stipulated into evidence in this case and may be so marked by the clerk:**

        **1.**     **Plaintiff's Exhibits:**

Plaintiff reserves the right to use Defendants' exhibits, plus the following:

| Exhibit # | Date Marked | Date Admitted | BATES BEG | BATES END | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| 1. | | | WARREN_000457 | WARREN_000459 | | 2002 0829 Book Contract |
| 2. | | | WARREN_000469 | WARREN_000471 | | 2004 0903 Book Contract- Ken Warren Teaches 7 Card Stud |
| 3. | | | WARREN_000457 | WARREN_000459 | | 2002 0829 Book Contract |
| 4. | | | WARREN_000592 | WARREN_000596 | | Total Book Sales Accounting |
| 5.  . | | | WARREN_000637 | WARREN_000637 | | Total Book Sales Accounting |
| 6. | | | WARREN_000649 | WARREN_000649 | | Royalty Statements-1997 B Sales Statement |
| 7. | | | WARREN_000482 | WARREN_000483 | | Cardoza Publishing Invoice |
| 8. | | | WARREN_000647 | WARREN_000647 | | Report 98 A |
| 9. | | | WARREN_000646 | WARREN_000646 | | Royalty 1999A |
| 10. | | | WARREN_000642 | WARREN_000642 | | Royalty 1999B |
| 11. | | | WARREN_000640 | WARREN_000641 | | Royalty 2000 A-B |
| 12. | | | WARREN_000643 | WARREN_000645 | | Cardoza Publishing Invoice |
| 13. | | | WARREN_000638 | WARREN_000639 | | Royalty 2001 A-B |
| 14. | | | WARREN_000617 | WARREN_000618 | | Royalty 2002 A-B |
| 15. | | | WARREN_000580 | WARREN_000584 | | Letter from Cardoza 2003 1003 |
| 16. | | | WARREN_000614 | WARREN_000616 | | Royalty 2003 A-B |
| 17. | | | WARREN_000612 | WARREN_000613 | | Royalty 2004 A-B |
| 18. | | | WARREN_000607 | WARREN_000611 | | Foreign Reports March-August 2005 |
| 19. | | | WARREN_000577 | WARREN_000579 | | Letter from Cardoza Publishing 2005 1221 |
| 20. | | | WARREN_000606 | WARREN_000606 | | Reports 2006A January -June |
| 21. | | | WARREN_000575 | WARREN_000576 | | Letter from Cardoza |

| Exhibit # | Date Marked | Date Admitted | BATES BEG | BATES END | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| | | | | | | Publishing regarding July – December 2006 Statements |
| 22. | | | WARREN_000574 | WARREN_000574 | | Letter from Cardoza Publishing regarding July – December 2007 Statements |
| 23. | | | WARREN_000605 | WARREN_000605 | | Reports 2007A January - June |
| 24. | | | WARREN_000602 | WARREN_000602 | | Reports 2007B July-December |
| 25. | | | WARREN_000600 | WARREN_000601 | | Royalty Statements for 2008-A-B (July-Dec 2008) |
| 26. | | | WARREN_000568 | WARREN_000573 | | Letter from Cardoza Publishing regarding 2008B Royalty |
| 27. | | | WARREN_000597 | WARREN_000599 | | Royalty Statement for 2009 (January - Dec 2009 A-B |
| 28. | | | WARREN_000563 | WARREN_000567 | | Letter from Cardoza Publishing regarding 2010 04142009B Royalty |
| 29. | | | WARREN_000510 | WARREN_000512 | | Das Grosse Pokerbuch |
| 30. | | | WARREN_000415 | WARREN_000420 | | Correspondence Letters from Stinson Morrison and Hecker dated 3/10/2011 and Mass dated 3/8/2011 |
| 31. | | | WARREN_000421 | WARREN_000448 | | Email between K. Warren & Cardoza |
| 32. | | | WARREN_000494 | WARREN_000500 | | 2008 Email between K. Warren & Cardoza |

| Exhibit # | Date Marked | Date Admitted | BATES BEG | BATES END | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| 33. | | | WARREN_000501 | WARREN_000503 | | 2008 Email between K. Warren & Cardoza |
| 34. | | | WARREN_000514 | WARREN_000516 | | 2010 0601 Fax from Cardoza |
| 35. | | | WARREN_000517 | WARREN_000525 | | Email between K. Warren & Cardoza |
| 36. | | | WARREN_000585 | WARREN_000587 | | 2002 1015 Letter from Cardoza to Authors |
| 37. | | | WARREN_000588 | WARREN_000590 | | 2002 0325 Letter from Cardoza to Authors |
| 38. | | | WARREN_000591 | WARREN_000591 | | 2001 1005 Letter from Cardoza to Authors |
| 39. | | | WARREN_000238 | WARREN_000243 | | 2016 0427 Termination letter from James R. Dowd |
| 40. | | | VERSA000001 | VERSA00004 | | Responsive documents pursuant to Subpoena Duces Tecum served upon Versa Press, Inc.[4] |
| 41. | | | EBM000001 | EBM000093 | | Responsive documents pursuant to Subpoena Duces Tecum served upon Edwards Brothers Malloy[5] |
| 42. | | | PGW000001 | PGW000003 | | Responsive Documents pursuant to Subpoena Duces Tecum served upon Publishers Group West[6] |

[4] Defendants stipulate as to the authenticity of the documents but not their admissibility.
[5] Defendants stipulate as to the authenticity of the documents but not their admissibility.
[6] Defendants stipulate as to the authenticity of the documents but not their admissibility.

| Exhibit # | Date Marked | Date Admitted | BATES BEG | BATES END | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| 43. | | | WARREN_000001 | WARREN_000019 | | Cardoza Affidavit and Motion to Dismiss, Docket from Missouri Action |
| 44. | | | WARREN_000020 | WARREN_000095 | | Pleadings from Judicial Court State of Missouri |
| 45. | | | WARREN_000096 | WARREN_000130 | | Declaration of James Dowd, Yeckel, Cardoza |
| 46. | | | WARREN_000131 | WARREN_000162 | | Cardoza Responses to Discovery Request and other pleadings in 11th Judicial Court, Missouri action |
| 47. | | | WARREN_000163 | WARREN_000194 | | Various pleadings, Complaint, Motions, Affidavit of Robert Casagrande, Cardoza and Warren in Federal Court Missouri Action |
| 48. | | | WARREN_000197 | WARREN_000237 | | Various pleadings, Complaint, Motions, Affidavit of Robert Casagrande, Cardoza and Warren in Federal Court Missouri Action |
| 49. | | | WARREN_000244 | WARREN_000294 | | Communications/Pleadings from U.S. District Court, Missouri Action |
| 50. | | | WARREN_000295 | WARREN_000306 | | Cardoza's Answers to Discovery Requests from 11th Judicial District |
| 51. | | | WARREN_000307 | WARREN_000414 | | U.S. BK Docket |

| Exhibit # | Date Marked | Date Admitted | BATES BEG | BATES END | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| | | | | | | (New Haven) and New York pleadings involving Cardoza Publishing and other litigation against Cardoza Publishing |
| 52. | | | WARREN_000513 | WARREN_000513 | | Web Research for Cardoza books |
| 53. | | | WARREN_000651 | WARREN_000660 | | Simon & Schuster response to 3rd Party Subpoena |
| 54. | | | WARREN_000672 | WARREN_000694 | | Malloy Incorporated 3rd Party Subpoena |

2.      **Defendants' Exhibits:**

Defendant reserves the right to use Plaintiff's exhibits, plus the following:

| Exhibit # | Date Marked | Date Admitted | Bates Beg | Bates End | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| A | | | DEF000001 | DEF000001 | | Ken Warren - Nielsen Book Scan |
| B | | | DEF000002 | DEF000025 | | Book Contracts |
| C | | | DEF000026 | DEF000029 | | Accounting Documents and Notes |
| D | | | DEF000030 | DEF000073 | | Royalty Statements |
| E | | | DEF000074 | DEF000082 | | Ken Warren Title Sales |
| F | | | DEF000083 | DEF000083 | | Copyright Winner's Guide to Texas Hold'em Poker |

| Exhibit # | Date Marked | Date Admitted | Bates Beg | Bates End | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| G | | | DEF000084 | DEF000084 | | Copyright Winner's Guide to Omaha Poker |
| H | | | DEF000085 | DEF000085 | | Copyright Ken Warren Teaches Texas Hold'em2 |
| I | | | DEF000086 | DEF000086 | | Copyright Ken Warren Teaches Texas Hold'em |
| J | | | DEF000087 | DEF000087 | | Copyright Ken Warren Teaches 7-Card Stud |
| K | | | DEF000088 | DEF000088 | | Copyright The Big Book of Poker |
| L | | | DEF000089 | DEF000089 | | 2017 Ken Warren Royalties |
| M | | | DEF000090 | DEF000100 | | Emails between Ken Warren and Avery Cardoza |
| N | | | DEF000030 | DEF000032 | | Royalty Statements-1996 B Sales Statement |
| O | | | DEF000033 | DEF000034 | | Report 98 A |
| P | | | DEF000036 | DEF000037 | | Royalty 1999A |
| Q | | | DEF000039 | DEF000039 | | Royalty 2000 B |
| R | | | DEF000040 | DEF000040 | | Royalty 2001 B |
| S | | | DEF000041 | DEF000042 | | Royalty 2002 A |
| T | | | DEF000043 | DEF000045 | | Royalty 2003 A |
| U | | | DEF000046 | DEF000047 | | Royalty 2004 A-B |

| Exhibit # | Date Marked | Date Admitted | Bates Beg | Bates End | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| V | | | DEF000048 | DEF000050 | | Foreign Reports March-August 2005 |
| W | | | DEF000051 | DEF000052 | | Reports 2006A January –June |
| X | | | DEF000053 | DEF000054 | | Reports 2007A-B January –June |
| Y | | | DEF000055 | DEF000056 | | Royalty Statements for 2008-A-B (January –June 2008) |
| Z | | | DEF000058 | DEF000059 | | Royalty Statement for 2009 (January - Dec 2009 A-B) |
| AA | | | DEF000060 | DEF000061 | | Royalty Statement for 2010 (January - Dec 2010 A-B |
| BB | | | DEF000062 | DEF000063 | | Royalty Statement for 2011 (January - June 2011 A-B |
| CC | | | DEF000064 | DEF000065 | | Royalty Statement for 2012 (January - Dec 2012 A-B |
| DD | | | DEF000066 | DEF000067 | | Royalty Statement for 2013 (January - Dec 2013 A-B |
| EE | | | DEF000068 | DEF000069 | | Royalty Statement for 2014 (January - June 2014 A-B |
| FF | | | DEF000070 | DEF000071 | | Royalty Statement for 2015 A-B |
| GG | | | DEF000072 | DEF000073 | | Royalty Statement for 2016 A-B |

A.   **As to the following additional exhibits, the parties have reached the stipulations as stated:**

1.   **Plaintiff's and Defendants' Joint Exhibits:**

| Exhibit # | Date Marked | Date Admitted | BATES BEG | BATES END | Witness | DESCRIPTION |
|---|---|---|---|---|---|---|
| 1. | | | DEF000013 | DEF000015 | | 1995 0404 Book Contract- Winner's Guide to Texas Hold'em Poker |
| 2. | | | DEF000002 | DEF000005 | | 1996 0624 Book Contract- Texas Hold'em 2 |
| 3. | | | DEF000023 | DEF000025 | | 2002 0613 Book Contract- Ken Warren Teaches Texas Hold'em |
| 4. | | | DEF000010 | DEF000012 | | 2002 0829 Book Contract- The Winner's Guide to Omaha Poker |
| 5. | | | DEF000007 | DEF000009 | | 2003 0201 Book Contract- The Big Book of Poker: A big, easy, and fun guide to winning |
| 6. | | | DEF000016 | DEF000018 | | 2004 0903 Book Contract- Ken Warren Teaches Advanced Texas Hold'em, Vol. 2 |
| 7. | | | DEF000019 | DEF000022 | | 2007 1204 Book Contract- Ken Warren Teaches Hold'em 2 |
| 8. | | | WARREN_000526 | WARREN_000562 | | Cardoza Publishing Company check- payable to Ken Warren |
| 9. | | | DEF000026 | DEF000029 | | Accounting Documents- Advances and Royalties |

| 10. | | | DEF000074 | DEF000082 | | Cardoza Publishing- Gross, Return & Net Sales for All Ken Warren Books |
| 11. | | | N/A | N/A | | Cardoza's Answers to First Set of Request for Production of Documents |
| 12. | | | N/A | N/A | | Cardoza's Answers to First Set of Interrogatories |

**B.     As to the following exhibits, the party against whom the same will be offered objects to their admission upon the grounds stated:**

**1. Objections by Defendant to Plaintiff's Exhibits:**

Defendants challenge each of the exhibits listed below on the basis of (1) hearsay, (2) best evidence, (3) foundation, (4) authentication, (5) failure to properly disclose during discovery and/or (6) relevance as noted.

| Exhibit No. | Description | Defendants Objections |
| --- | --- | --- |
| 1-3 | Book contracts, as identified by Plaintiff above | ▪  1, 3, 4 and 5 |
| 4, 5 | Total Book Sales Accounting | ▪  1, 3, 4 and 5 |
| 6-28 | Royalty statements, invoices, and other various accounting records | ▪  1, 3, 4 and 5 |
| 29 | Das Grosse Pokerbuch | ▪  2, 3, 4, 5, and 6 |
| 30 | Correspondence Letters from Stinson Morrison and Hecker dated 3/10/2011 and Mass dated 3/8/2011 | ▪  1, 3, 4, 5, and 6 |
| 31-33, 35 | Emails between K. Warren and Cardoza | ▪  1, 3, 4, ]5, and 6 |
| 34 | June 1, 2010 Fax and letter from Witt to Cardoza | ▪  1, 3, 4, 5, and 6 |
| 36-38 | Letters from Cardoza | ▪  1, 3, 4, 5, and 6 |

| Exhibit No. | Description | Defendants Objections |
|---|---|---|
| 39 | April 27, 2016 Letter from Dowd to Cardoza | ▪ 1, 4, and 5 |
| 40-42 | Responsive documents to third-party subpoenas | ▪ 1, 3, and 5 |
|  |  |  |
| 43-44 | Pleadings from Judicial Court State of Missouri | ▪ 1, 3, 4, 5 and 6 |
| 45 | Declarations of James Dowd, Yeckel, Cardoza | ▪ 1, 3, 4, 5 and 6 |
| 46 | Cardoza responses to Discovery Request and other pleadings in the 11th Judicial Court, Missouri Action | ▪ 1, 3, 4, 5 and 6 |
| 47-49 | Various pleadings in Federal District Court, Eastern District of Missouri, as Identified by Plaintiff above | ▪ 1, 2, 3, 4, 5 and 6 |
| 50 | Cardoza's Answers to Discovery Requests from 11th Judicial District | ▪ 1, 2, 3, 4, 5 and 6 |
| 51 | U.S. BK Docket (New Haven) and New York pleadings involving Cardoza Publishing and other litigation against Cardoza Publishing | ▪ 1, 2, 3, 4, 5 and 6 |
| 52 | Web Research for Cardoza books | ▪ 1, 3, 4, 5 and 6 |
| 53 | Simon & Schuster response to 3rd Party Subpoena | ▪ 1, 3, 4, 5 and 6 |
| 54 | Malloy Incorporated 3rd Party Subpoena | ▪ 1, 3, 4, 5 and 6 |

## 2.  Objections by Plaintiff to Defendant's Exhibits:

Plaintiff challenges each of the exhibits listed below on the basis of (1) hearsay, (2) best evidence, (3) foundation, (4) authentication, (5) failure to properly disclose during discovery and/or (6) relevance as noted.

| Exhibit No. | Description | Plaintiff's Objection |
|---|---|---|
| A | Ken Warren - Nielsen Book Scan | ● 2 and 4 |
| C | Accounting Documents and Notes | ● 2 and 4 |

| Exhibit No. | Description | Plaintiff's Objection |
|:---:|:---|:---|
| **D** | Royalty Statements | • 1, 2, and 4 |
| **E** | Ken Warren Title Sales | • 4 |
| **M** | Emails between Ken Warren and Avery Cardoza | • 1, 2, 3, 4, and 6 |
| **N** | Royalty Statements-1996 B Sales Statement | • 1, 2, and 4 |
| **O** | Report 98 A | • 1, 2, and 4 |
| **P** | Royalty 1999A | • 1, 2, and 4 |
| **Q** | Royalty 2000 B | • 1, 2, and 4 |
| **R** | Royalty 2001 B | • 1, 2, and 4 |
| **S** | Royalty 2002 A | • 1, 2, and 4 |
| **T** | Royalty 2003 A | • 1, 2, and 4 |
| **U** | Royalty 2004 A-B | • 1, 2, and 4 |
| **V** | Foreign Reports March-August 2005 | • 1, 2, and 4 |
| **W** | Reports 2006A January –June | • 1, 2, and 4 |
| **X** | Reports 2007A-B January –June | • 1, 2, and 4 |
| **Y** | Royalty Statements for 2008-A-B (January –June 2008) | • 1, 2, and 4 |
| **Z** | Royalty Statement for 2009 (January - Dec 2009 A-B) | • 1, 2, and 4 |
| **AA** | Royalty Statement for 2010 (January - Dec 2010 A-B | • 1, 2, and 4 |
| **BB** | Royalty Statement for 2011 (January - June 2011 A-B | • 2 and 4 |
| **CC** | Royalty Statement for 2012 (January - Dec 2012 A-B | • 2 and 4 |
| **DD** | Royalty Statement for 2013 (January - Dec 2013 A-B | • 2 and 4 |
| **EE** | Royalty Statement for 2014 (January - June 2014 A-B | • 2 and 4 |
| **FF** | Royalty Statement for 2015 A-B | • 2 and 4 |
| **GG** | Royalty Statement for 2016 A-B | • 2 and 4 |

C.    **Depositions:**

   1.    **Plaintiff will offer the following depositions:**

   Not Applicable.  No depositions were taken in this case.

   2.    **Defendant will offer the following depositions:**

   Not Applicable.  No depositions were taken in this case.

D.    **Objections to Depositions:**

   1.    **Plaintiff objects to Defendant's depositions as follows:**

   Not Applicable.  No depositions were taken in this case.

   **Defendant objects to Plaintiff's depositions as follows:**

   Not Applicable.  No depositions were taken in this case.

**VIII.    WITNESSES WHO MAY BE CALLED UPON TRIAL**

A.    **Plaintiff's Witnesses:**

1.    Kenneth Warren
       c/o Dickinson Wright PLLC
       8363 Sunset Road, Suite 200
       Las Vegas, Nevada 89113
       (702) 550-4000

2.    Avery Cardoza *also known as* Allan Silverstang
       c/o JOHN H. GUTKE
       552 E. Charleston Blvd.
       Las Vegas, NV 89104
       702-766-1212
       Fax: 702-825-0311

3.    Person Most Knowledgeable *Cardoza Publishing, Inc.*
       c/o JOHN H. GUTKE
       552 E. Charleston Blvd.
       Las Vegas, NV 89104
       702-766-1212

4.    Person Most Knowledgeable *Edward Brothers Malloy*
       5411 Jackson Road
       Ann Arbor, Michigan 48103

5.    Person Most Knowledgeable *Simon & Schuster*
       TBD

6.      Petra Hundacker *Heel Verlag GmbH*
        [Unknown]

7.      James Stern *Cardoza London*
        c/o JOHN H. GUTKE
        552 E. Charleston Blvd.
        Las Vegas, NV 89104
        702-766-1212

8.      Sam Ladlow *Cardoza London*
        c/o JOHN H. GUTKE
        552 E. Charleston Blvd.
        Las Vegas, NV 89104
        702-766-1212

9.      Mary Grimes *Cardoza London*
        c/o JOHN H. GUTKE
        552 E. Charleston Blvd.
        Las Vegas, NV 89104
        702-766-1212

**B.      Defendant's Witnesses:**

1.      Avery Cardoza aka
        c/o John H. Gutke, Esq.
        GUTKE LAW GROUP
        552 E. Charleston Blvd.
        Las Vegas, Nevada 89104
        (702) 766-1212

2.      Robert Casagrande
        c/o John H. Gutke, Esq.
        GUTKE LAW GROUP
        552 E. Charleston Blvd.
        Las Vegas, Nevada 89104
        (702) 766-1212

3.      Dana Smith
        5805 W. Harmon, #65
        Las Vegas, Nevada 89103

4.      Kenneth C. Warren
        c/o Dickinson Wright PLLC
        8363 Sunset Road, Suite 200
        Las Vegas, Nevada 89113
        (702) 550-4000

## IX.   TRIAL DATES

    Counsel for parties have met and herewith submit a list of three (3) agreed-upon trial dates:

| October 7-11 | November 4-8 | November 11-15 |
|---|---|---|

    It is expressly understood that the Court will set the trial of this matter on one of the agreed-upon dates, if possible; if not, trial will be set at the convenience of the Court's calendar.

## X.   ESTIMATED TIME FOR TRIAL

    It is estimated that the trial herein will take a total of 4-5 days.

APPROVED AS TO FORM AND CONTENT:


Dated this 25th day of April, 2019        Dated this 25th day of April, 2019

**DICKINSON WRIGHT PLLC**        **GUTKE LAW GROUP**


 /s/ Hilary Williams                 /s/ John H. Gutke
JOHN L. KRIEGER                JOHN H. GUTKE
HILARY WILLIAMS              552 East Charleston Boulevard
8363 West Sunset Road, Suite 200      Las Vegas, NV 89104
Las Vegas, NV 89113-2210         Tel:  (702) 766-1212
Tel:  (702) 550-4400             Fax:  (702) 825-0311
Fax;  (844) 670-6009             Email: john@gutkelaw.com
                         *Attorneys for Defendants*

**ONDERLAW, LLC**
James R. Dowd
(Missouri Bar No. 28818MO) (*Pro Hac Vice*)
MATTHEW P. O'GRADY
(Missouri Bar No. 47543MO) (*Pro Hac Vice*)
110 East Lockwood, 2nd Floor
St. Louis, MO 63119
Tel: (314) 963-9000
Fax: (314) 963-1700
*Attorneys for Plaintiff Ken Warren*

# XI.

## ACTION BY THE COURT

(a) This case is set down for a **JURY** trial on the **October 8, 2019, 9:00 a.m. trial stack**. **The parties must appear for Calendar Call on September 30, 2019, at 1:30 p.m.**

(b) No later than **12:00 p.m. on September 30, 2019**, each party must file with the Court:

(1) The parties' trial briefs

(2) The parties' exhibit and witness lists

(3) Proposed jury instructions and proposed voir dire questions (for jury trials)

(4) Proposed findings of facts and conclusions of law (for bench trials)

(c) **The deadline for filing MOTIONS IN LIMINE is September 8, 2019.** The process for preparing and filing motions in limine will be governed by the following additional rules and considerations:

(1) As Local Rule 16-3 requires, before any motion in limine is filed, the parties must meet and confer (by telephone or in person not merely by email or some other form of writing) about the substance of each contemplated in-limine issue and attempt to reach an agreement on the issue. Evidentiary agreements reached during this process should be memorialized by a written stipulation. If the parties do not reach an agreement on an issue and a motion in limine remains necessary, **the motion must be accompanied by a declaration or affidavit certifying that counsel actually conferred in good faith** to resolve the issue before the motion was filed (or re-filed), see L.R. 16-3(a). The failure to include the certificate of counsel will result in the automatic denial of the motion without the opportunity to cure this deficiency.

(2) Motions in limine must address only true evidentiary issues and not be belated motions for dispositive rulings disguised as a motion in limine.

(3) Any party desiring to file motions in limine **must include all in-limine issues in a SINGLE, omnibus motion** that numbers each issue consecutively; no party may file multiple, separate motions. This format eliminates the need for redundant recitations of facts and introductory statements of the law. If the size of the omnibus motion exceeds the page limit in the local rule, *see* L.R. 7-3(b), a separate motion to exceed the page limits should be filed contemporaneously with the omnibus motion; the motion to exceed page limits must not be styled as an "emergency."

(4) Replies in support of the motions in limine will be allowed only with leave from the court and each side may file only a single request for leave, see L.R. 16-3(a). The parties should not presume that the court will grant these requests for leave, so proposed orders granting them should not be submitted.

(5) The parties are cautioned that vague requests based on speculative issues, like requests to generally preclude improper attorney arguments, violations of the golden rule, or irrelevant evidence will be flatly denied. The court intends to follow the rules of evidence and procedure at trial and expects the parties to do the same.  Motions seeking little more than an order enforcing a rule waste the court's time and the parties' resources. Counsel is strongly cautioned that abuse of the motion-in-limine vehicle in this manner may result in sanctions against the attorneys.

//

//

//

1     This order will govern the trial of this case and may not be amended except by order of

2  the court.

3     **IT IS FURTHER ORDERED that the parties appear for a Status Conference on**

4  **June 3, 2019, at 3:00 p.m. in LV Courtroom before Judge Jennifer A. Dorsey.**

5

6     DATED: 5/1/2019

7     _____

      JENNIFER A. DORSEY

8     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

3